J. H. MAGRUDER *et al. v.* BELHAVEN COLLEGIATE AND
INDUSTRIAL INSTITUTE.

[63 South. 349.]

COLLEGES AND UNIVERSITIES. *Property and funds. Private donations.*
   Where in order to secure the location of a college on their lands,
   appellants offered to donate certain lands to the board of trustees
   of the college, and in their offer further provided that, "in addi-
   tion to this, we will give you one thousand five hundred dollars
   in cash, that you may spend in laying a sidewalk through the
   Gillespie property, or purchase additional land east of the site
   donated just as your board prefers," and the college elected to
   lay the sidewalk, in such case appellants were bound to pay the
   one thousand five hundred dollars, although the laying of the
   walk did not cost so much.

APPEAL from the Circuit Court of Hinds county.
HON. W. A. HENRY, Judge.
Suit by Belhaven Collegiate and Industrial Institute
against J. H. Magruder and others. From a judgment
for plaintiff, defendants appeal.
The facts are fully stated in the opinion of the court.

*Allen Thompson* and *Harris & Potter,* for appellants.

It was insisted in the court below by the counsel for the
appellee that this was an unqualified subscription, and,
that notwithstanding the fact set up on the plea, the ap-
pellants were liable on this subscription for the full
amount regardless of what purpose the appellees might
apply the balance when collected.

There can be no dispute as to the terms of the subscrip-
tion, because they are in writing, and there is nothing in
the subscription to warrant the conclusion that this was
an unqualified donation. If so, why should the subscrib-
ers specify particularly the purposes for which the money
was to be applied?

It seems to be a well-settled rule of universal application that, in cases of this character, the subscribers are only liable for the money actually spent or required for carrying out the purpose for which the subscription is made, and in the event the whole of the subscription is not absorbed the subscribers are only liable *pro rata*. The rule is laid down in 37 Cyc. 500, par. C, as follows: "Abatement of subscriptions. If less than the amount subscribed is expended upon the undertaking, each subscriber is liable only for his *pro rata* share of the sum expended."

The same rule is laid down in 24 Am. & Eng. Ency. Law, O. S. 341, in these words: "If all the money subscribed is necessarily used in securing the end desired, a recovery in action upon the subscription will be limited to the amount subscribed; but if the amount expended is less than the whole amount subscribed, the recovery will be limited to the amount so expended and will be divided among the subscribers *pro rata*."

The same rule is laid down in 27 Am. & Eng. Ency. of Law, N. S., 285. It seems in the light of these authorities that there can be no question as to the rights of the parties, and that the judgment of the court below must be reversed.

If the contention of counsel is good as to part of the subscription it will be good as to the whole. In other words, if it was, as they contend, an unqualified subscription, the appellee would have been entitled to the money outright to devote it to any purpose that they saw fit. But by the very terms of the subscription, the money was to be applied to specific purposes, and in the light of the authorities which we have cited above we see no escape from the conclusion that the judgment of the court below must be reversed.

*Alexander & Alexander,* for appellee.

The record in this case is so simple that we do not deem it necessary to state any further facts than those stated

in the brief by appellant's counsel. In order that the court may have before them the particular clause of the contract involved in this case, we herein quote this clause as follows: "In addition to this, we will give you one thousand, five hundred dollars in cash that you may spend in laying a sidewalk through the Gillespie property, or purchase additional land east of the site donated, just as your board prefers."

We are confronted, at the outset, with the construction of the clause in the contract referred to, the sole issue, therefore, being whether or not the clause should be so construed that the laying of the sidewalk through the Gillespie property or the purchase of additional land was a condition or a mere recital in the contract. "The contract evidenced by the subscription, not being essentially different from contracts in general, is to be construed by the same rules of interpretation." 27 Am. & Eng. Enc. Law, page 283. "The rules applicable generally to the construction of written contracts govern the construction of subscription contracts." The contract will be construed with reference to the intent of the parties at the time, and the court will consider the subject-matter of the agreement, the inducement which influenced the subscription, the circumstances under which it was made and the phraseology thereof." 37 Cyc. 496.

Looking at this clause in the contract under the general principles just announced, it will be presumptious on our part to endeavor to enlighten the court on the grammatical construction of the provisions in the agreement. We will state, however, that the agreement to give one thousand five hundred dollars in cash was absolute, and the balance of the clause, to wit: "That you may spend in laying a sidewalk through the Gillespie property or purchase additional land east of the site donated, just as your board prefers," was a mere recital and not a condition precedent to the payment of the one thousand five hundred dollars. We can only add, how-

ever, that when it is written "that you may spend . . . just as your board prefers," it would be a very strict, if not a forced, construction of the sentence to hold that "may" meant "must" or "shall." It will be well to call the court's attention to the case of *Judson University* v. *Kinkaid,* 50 Kan. 369, which is more nearly in point with the case at bar than any we have been able to find after a careful research.

There was no agreement by the board of trustees of the Belhaven Collegiate and Industrial Institute to build a sidewalk; indeed, there was no proviso in reference to the payment of the one thousand five hundred dollars in cash and no forfeiture whatever provided by the terms of the agreement. In fact, under the agreement, the board can yet spend the balance of the one thousand five hundred dollars in cash "as the board prefers," and the plea setting up that there was a condition precedent to build sidewalks or purchase land, was properly refused by the lower court. We cannot deny that when several unite in subscribing for particular purpose with agreement that a certain sum should be used in carrying out that purpose, that a subscriber can recover back his *pro rata* share of any excess funds paid in on subscriptions above and in excess of the amount necessary to perform the purpose. This point is not involved in this case. The college building was erected on the site and in the manner agreed on, and it was erected largely from subscriptions of those who were to receive some substantial benefit from the project, and other patriotic citizens who could foresee the good to result from such an enterprise. The very clause in the agreement involved in this suit contained a recital giving the board of trustees discretionary powers, and even a casual glance at the contract will disclose that the payment of the one thousand five hundred dollars in cash was not limited by a condition that the sidewalk would be constructed to that amount. Counsel admit in their brief that the sidewalk was constructed and no-

where in the record does it appear that there was an effort on the part of the trustees to overlook any of the provisions and agreements with this particular subscriber, or in fact, any others; and, even if appellant's contention were sound, it cannot be doubted that only a substantial compliance was sufficient. 37 Cyc. 49y; citing *Hunt* v. *Upton*, 44 Wash. 124, 87 Pac. 56.

There is no contention in this case that the subscriber did not receive substantial benefits; indeed, it is manifest that this particular subscription was made, not from patriotic motives, but purely for personal gain. It is to be regretted that subscriptions of this character have to be collected by litigation, but in behalf of the board of trustees we respectfully ask for affirmance of the judgment of the lower court.

REED, J., delivered the opinion of the court.

The declaration sets forth that appellants, on March 28, 1911, were endeavoring to persuade the trustees of a new college, which was to be located in or near the city of Jackson, to accept from them the donation of a site for the erection of the buildings of the college out of lands owned by them in the northeastern suburbs of the city; that appellants offered to the trustees, in addition to the site, other inducements, among which was a cash offer of one thousand five hundred dollars, to be paid by them and expended by the college for laying a sidewalk to North State street or in purchasing additional land; that the trustees accepted the site and erected thereon a valuable college building, and that thereupon the one thousand five hundred dollars promised became due and payable. The total amount of one thousand one hundred and fifty-seven dollars and fifty cents was paid by appellants, and this suit is for the balance of three hundred and forty-two dollars and fifty cents.

There is filed as Exhibit A to the declaration a copy of the agreement by appellants to make additional donations

to the college, which is as follows: ''To the Board of Trustees of Belhaven Collegiate & Industrial Institute— Gentlemen: In addition to the property described in an option given by J. R. Preston and assignees on March 1, 1911, we, the undersigned, hereby agree to donate to the college the following described property adjoining the property heretofore donated: The south half of block O, property of the Hollingsworth-Lott Company, and the north half of block four of the Magruder property. This block four is the property immediately south of block O of the North Belle View subdivision. In addition to this donation, we agree to join in and close Magruder avenue, from Peachtree street to Hawthorn street, and, if desired, to close Olive street, from Arlington street through to the first street couth of Magruder avenue. In addition to this, we agree to lay sidewalks on property owned by us as indicated by red lines on the map filed with our proposition. In addition to this, we have an agreement made to Dr. Hutton, by the owners of the Gillespie property, whereby a street will be run through their property to State street, a distance of five blocks. In addition to this, we will give you one thousand five hundred dollars in cash, that you may spend in laying a sidewalk through the Gillespie property, or purchase additional land east of the site donated, just as your board prefers. Witness our signature this 28th day of March, 1911, A. D. [Signed] The Hollingsworth-Lott Company, by Allen Thompson, Secretary. J. H. Magruder.''

Appellants filed a plea to the declaration, alleging that they were not indebted in the amount claimed by appellee; that the trustees preferred and elected to build a sidewalk, as provided in the agreement; that the cost of construction of the sidewalk was less than the amount already paid by them on their agreement; and that the payment by them of the cost of constructing the sidewalk was a fulfillment of their agreement and a discharge of the obligation sued on. To this plea appellee interposed

a demurrer, setting forth as ground that neither the contract nor anything stated in the plea limited to less than one thousand five hundred dollars the amount defendants obligated themselves to pay. This demurrer was sustained.

The record shows a business transaction between appellants and the trustees of appellee. Appellants desired to secure the location of the college on lands owned by them. Appellants offered to give the site, and then, as further inducement, agreed to donate more land to close certain streets or avenues, to lay certain sidewalks on their property, and to give the trustees one thousand five hundred dollars in cash, which they could spend in laying out a sidewalk through a property where a street was to run, or to purchase additional land as they might prefer. Appellants were successful in their efforts, and the college was located on their property. We do not look upon this as a subscription to the construction of the sidewalk or purchase of land, but consider it an agreement by appellants to pay a certain sum upon the location of the college, and conditioned that a sidewalk be built or land be purchased. Appellee elected to lay the sidewalk. We do not see that the actual amount expended by appellee in the work concerns appellants. The sidewalk was constructed, and this fulfilled appellee's part of the agreement. It is our construction of the agreement that appellants were obligated to pay the full amount of one thousand five hundred dollars to appellee.

*Affirmed.*

COOK, J. (dissenting).

I cannot agree with the court in its construction of the written instrument referred to in the opinion. It will be noted that in all of the other donations and agreements embodied in the instrument there are no qualifying words. They are all definite and unqualified, depending alone upon the location of the college upon the lands offered by appellants.

The only matter in controversy is the gift of one thousand five hundred dollars, and it seems to be evident that this sum of money would be paid to the college only in the event the trustees decided to lay a sidewalk or purchase additional lands. It was left to the board of trustees to decide whether this money would be expended for a sidewalk or for additional lands. The board elected to lay the sidewalk, and appellants paid for same. The college got the sidewalk. Appellants donated the sidewalk, and it seems to me that this was what appellants agreed to give. As I understand the opinion of the court, it is held that the gift of one thousand five hundred dollars was conditioned alone upon the laying of the sidewalk or the purchase of land. This construction amounts to this: The board could lay a cheap sidewalk through the property mentioned, costing one-fifth of the amount donated, and thereby and because thereof they could demand and recover from appellants one thousand five hundred dollars. The board could buy land of the value of one hundred dollars, and gain one thousand four hundred dollars by the trade.

So at last the court holds that this agreement to give one thousand five hundred dollars is an additional bonus to induce the college to adopt the site offered by appellants. In other words, the cost of the improvement—a sidewalk—is a mere inconsequential detail, and bears no relation to the amount of the conditional gift. It would seem that, if the donors meant this, they went a long way around to express a very simple purpose. I think it more reasonable to say that the intention was to donate one thousand five hundred dollars for the purpose of constructing a sidewalk, and for this purpose alone, should the board elect to apply the gift to this improvement, and if the sidewalk has been built and paid for by appellants, the spirit and intent of the contract has been fully satisfied. The purpose was to donate a sidewalk, if the board preferred a sidewalk, and not to give one thousand five

hundred dollars, or any part thereof, for any other purpose than the purpose expressly mentioned.

I am unable to find anything in the writing to indicate that appellants agreed to give one thousand five hundred dollars, in addition to other donations, in consideration of the location of the college on their lands. In my opinion the court has written into the agreement an obligation not assumed by appellants.